**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSE PEREZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1208-CR-418 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
The Honorable Anne Flannelly, Commissioner
Cause No. 49G22-1203-FA-16890

**May 23, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Jose Perez appeals his conviction for robbery as a class B felony. Perez raises one issue, which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.[1]

The relevant facts follow. On February 4, 2012, Oscar Herrera-Romero ("Herrera") was at his apartment in Indianapolis, Indiana, with Gustavo Munoz and Herrera's cousin Justino Herrera, and Herrera and Munoz were smoking crack. At one point, Herrera went to the bathroom when there was a knock at the front door. Justino went to the front door and heard Perez's brother Enrique say "[o]pen the door, I have a weapon" and to open the door or he was "going to be f----- up." Transcript at 106-107. Justino attempted to answer the door, but before he could answer, Perez and Enrique broke down the door and entered the apartment. Upon entering, Enrique struck Justino in the chest, asked where Herrera was, and told Justino to sit down and not do anything. Perez, armed with a full bottle of beer, opened the bathroom door, observed Herrera, and stated "here you are" and "I told you," which caused Herrera to feel scared. Id. at 55-56. Perez then struck Herrera on his left eyebrow with the beer bottle, causing Herrera pain. Perez then hit Herrera several times with his hands, grabbed Herrera by his ponytail, and dragged him from the bathroom and into the living room. Perez continued to punch and kick Herrera "all the way to the front room." Id. at 58.

Once in the front room, Herrera was on his knees and was blocking blows to his face by covering his head, and Perez demanded money from Herrera.[2] While this was

---

[1] As discussed below, we also remand for the court to correct a scrivener's error.

[2] Herrera testified at trial that he and Perez had been in a band and had received a loan in order to do "some kind of celebration for the band," that he had begun to believe that Perez was not repaying the

2

happening, Enrique was standing in front of Justino, who was sitting in a chair, as well as Munoz, and Enrique advised them not to become involved. Then, Perez told Enrique to "pull the gun," and he reached inside Herrera's pants pockets and removed his cell phone and wallet which contained a one dollar bill and a check for $1,000 made out to Herrera and signed by Victor Sosa.[3] Id. at 65. Perez handed the wallet to Enrique. Enrique then kicked Herrera, warned him not to tell the police, and the two men left. Herrera located his wallet and cell phone in the room, but when he looked inside of the wallet he noticed that the $1,000 check was gone.

On March 14, 2012, the State charged Perez with Count I, burglary as a class A felony; Count II, robbery as a class B felony; and Count III, criminal confinement as a class B felony. The next day, the State filed an amended charging information because the date of the offenses on the original charging information was incorrect. In May 2012, the State again amended the charging information and specifically amended the language of Count II and charged Count III as a class D felony rather than a class B felony. On June 28, 2012, the court held a joint jury trial for both Perez and Enrique in which evidence consistent with the foregoing was presented. The jury found Perez guilty on Counts II and III, and on Count I, burglary, the jury found Perez not guilty of burglary but guilty of residential entry as a class D felony as a lesser included offense. On July 19, 2012, the court sentenced Perez to six years on Count II and 545 days each on Counts I

---

loan with the money that Herrera had been giving Perez, and that he decided to stop paying Perez. Transcript at 60.

[3] Herrera testified at trial that Sosa was a friend whom he had helped with some remodeling work on Sosa's home.

and III, and it ordered that Perez serve his sentences concurrently with each other. Thus, Perez received an aggregate sentence of six years in the Department of Correction.

The issue is whether the evidence is sufficient to sustain Perez's conviction for robbery as a class B felony. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id. The uncorroborated testimony of one witness, even if it is the victim, is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991). However, "[a] conviction cannot be based on speculation." Gross v. State, 817 N.E.2d 306, 311 (Ind. Ct. App. 2004). When two or more people combine their efforts to commit a crime, each person is criminally responsible for all acts committed by his confederates. Draper v. State, 556 N.E.2d 1380, 1383 (Ind. Ct. App. 1990), trans. denied.

The offense of robbery as a class B felony is governed by Ind. Code § 35-42-5-1, which provides:

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> (1)     by using or threatening the use of force on any person; or
>
> (2)     by putting any person in fear;

4

commits robbery, a Class C felony. However, the offense is a Class B felony if it . . . results in bodily injury to any person other than a defendant . . . .

The charging information, as amended, alleged that Perez and Enrique, "on or about March 4, 2012, did knowingly take from . . . [Herrera] property, that is: phone and/or check and/or U.S. Currency, by putting [Herrera] in fear or by using or threatening the use of force on [Herrera], which resulted in bodily injury to [Herrera] that is: lacerations and/or cuts and/or pain." Appellant's Appendix at 39. Thus, in order to convict Perez of robbery as a class B felony, the State needed to prove that Perez knowingly took either Herrera's phone, currency, or the check, by putting Herrera in fear or by threatening the use of force and caused bodily injury in the form of lacerations, cuts, or pain.

Perez argues that the State presented insufficient evidence that property was taken "because there was no corroborating evidence that the $1,000 check existed," and "[i]f there was no check, then [Perez] could not be guilty of taking that check from [Herrera]." Appellant's Brief at 8. Perez notes that he "requested contact information for the person who wrote the check or his estate, contact information for the bank where the check had been written and a copy of the stop payment order for the check," the court granted Perez's motion, and the State filed a response and "announced it had 'no valid contact information at this time for Victor Sosa or his estate,' no information 'regarding the bank . . .' and no 'documentation regarding a Stop-Payment order . . . .'" Id. Perez also notes that, at trial, Herrera indicated that Sosa had passed away from pneumonia after undergoing cancer treatment and accordingly did not testify. Perez also argues that Justino testified that he was unaware of the check and that Herrera worked in a factory

5

and previously for Taco Bell and not in construction. Perez argues that the check's existence is based upon only Herrera's self-serving testimony.

Here, the evidence most favorable to Perez's conviction reveals that Perez, while accompanied by Enrique, broke down Herrera's door and entered the apartment. Perez found Herrera in the bathroom and told Herrera "here you are" and "I told you," which made Herrera feel scared. Transcript at 55-56. Perez struck Herrera with the beer bottle which caused him pain. Perez dragged Herrera by his ponytail into the living room, and in so doing struck Herrera with his hands and feet several times. Perez removed Herrera's cell phone and wallet from his pockets. Enrique also kicked Herrera. Herrera testified that, prior to the incident, his wallet contained a check for $1,000 which was missing afterwards. The State presented numerous photographs of Herrera depicting cuts or scrapes on his head, leg, and torso. Perez's argument is merely a request that we reweigh the evidence and reevaluate the credibility of the witnesses, which we cannot do. See Rohr v. State, 866 N.E.2d 242, 248 (Ind. 2007), reh'g denied.

Based upon our review of the record, we conclude that evidence of probative value exists from which the jury could have found Perez guilty beyond a reasonable doubt of robbery as a class B felony. See Davis v. State, 835 N.E.2d 1102, 1111 (Ind. App. Ct. 2005) ("[W]here two people act in concert to commit a crime, each may be charged as a principal in all acts committed by the accomplice in the accomplishment of the crime."), trans. denied; Thompson v. State, 612 N.E.2d 1094, 1098 (Ind. Ct. App. 1993) (noting that "[t]he uncorroborated testimony of even one witness is sufficient to support a

conviction" and that "[t]his is true even though the witness in question is the victim"), reh'g denied, trans. denied.

Finally, we observe that the abstract of judgment indicates that Perez was convicted of criminal confinement as a class B felony rather than as a class D felony. As noted above, the court granted the State's motion to amend the charge of criminal confinement to a class D felony, and the verdict form entered by the jury states that it found Perez guilty of criminal confinement as a class D felony. Accordingly, we remand with instructions that the court issue an amended abstract of judgment as well as enter Perez's conviction for criminal confinement on Count III as a class D felony.

For the foregoing reasons, we affirm Perez's conviction for robbery as a class B felony and remand for the court to issue an amended abstract of judgment correcting a scrivener's error and entering a conviction on Count III as criminal confinement as a class D felony.

Affirmed and remanded.

RILEY, J., and BRADFORD, J., concur.