**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ERIC K. KOSELKE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JONATHAN R. SICHTERMANN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Apr 16 2013, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ENRIQUE PEREZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1208-CR-419 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
The Honorable Anne Flannelly, Commissioner
Cause No. 49G22-1203-FA-16892

April 16, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Enrique Perez appeals his conviction for robbery as a class B felony. Perez raises one issue, which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.[1]

The relevant facts follow. On February 4, 2012, Oscar Herrera-Romero ("Herrera") was at his apartment in Indianapolis, Indiana, with Gustavo Munoz and Herrera's cousin Justino Herrera, and Herrera and Munoz were smoking crack. At one point, Herrera went to the bathroom when there was a knock at the front door. Justino went to the front door and heard Perez say "[o]pen the door, I have a weapon" and to open the door or he was "going to be f----- up." Transcript at 106-107. Justino attempted to answer the door, but before he could answer, Perez and his brother Jose Perez broke down the door and entered the apartment. Upon entering, Perez struck Justino in the chest, asked where Herrera was, and told Justino to sit down and not do anything. Jose, armed with a full bottle of beer, opened the bathroom door, observed Herrera, and stated "here you are" and "I told you," which caused Herrera to feel scared. Id. at 55-56. Jose then struck Herrera on his left eyebrow with the beer bottle, causing Herrera pain. Jose then hit Herrera several times with his hands, grabbed Herrera by his ponytail, and dragged him from the bathroom and into the living room. Jose continued to punch and kick Herrera "all the way to the front room." Id. at 58.

Once in the front room, Herrera was on his knees and was blocking blows to his face by covering his head, and Jose demanded money from Herrera.[2] While this was

<hr>

[1] As discussed below, we also remand for the court to correct a scrivener's error.

[2] Herrera testified at trial that he and Jose had been in a band and had received a loan in order to

happening, Perez was standing in front of Justino, who was sitting in a chair, as well as Munoz, and Perez advised them not to get involved. Then, Jose told Perez to "pull the gun," and he reached inside Herrera's pants pockets and removed his cell phone and wallet which contained a one dollar bill and a check for $1,000 made out to Herrera and signed by Victor Sosa.[3] Id. at 65. Jose handed the wallet to Perez. Perez then kicked Herrera, warned him not to tell the police, and he left with Jose. Herrera located his wallet and cell phone in the room, but when he looked inside of the wallet he noticed that the $1,000 check was gone.

On March 14, 2012, the State charged Perez with Count I, burglary as a class A felony; Count II, robbery as a class B felony; and Count III, criminal confinement as a class B felony. The next day, the State filed an amended charging information because the date of the offenses on the original charging information was incorrect. In May 2012, the State again amended the charging information and specifically amended the language of Count II and charged Count III as a class D felony rather than a class B felony. On June 28, 2012, the court held a joint jury trial for both Perez and Jose in which evidence consistent with the foregoing was presented. The jury found Perez guilty on Counts II and III, and on Count I, burglary, the jury found Perez not guilty of burglary but guilty of residential entry as a class D felony as a lesser included offense. On July 19, 2012, the court sentenced Perez to six years on Count II and 545 days each on Counts I and III, and

---

do "some kind of celebration for the band," that he had begun to believe that Jose was not repaying the loan with the money that Herrera had been giving Jose, and that he decided to stop paying Jose. Transcript at 60.

[3] Herrera testified at trial that Sosa was a friend whom he had helped with some remodeling work on Sosa's home.

it ordered that Perez serve his sentences concurrently with each other. Thus, Perez received an aggregate sentence of six years in the Department of Correction.

The issue is whether the evidence is sufficient to sustain Perez's conviction for robbery as a class B felony. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id. The uncorroborated testimony of one witness, even if it is the victim, is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991). However, "[a] conviction cannot be based on speculation." Gross v. State, 817 N.E.2d 306, 311 (Ind. Ct. App. 2004). When two or more people combine their efforts to commit a crime, each person is criminally responsible for all acts committed by his confederates. Draper v. State, 556 N.E.2d 1380, 1383 (Ind. Ct. App. 1990), trans. denied.

The offense of robbery as a class B felony is governed by Ind. Code § 35-42-5-1, which provides:

A person who knowingly or intentionally takes property from another person or from the presence of another person:

    (1)    by using or threatening the use of force on any person; or

    (2)    by putting any person in fear;

4

commits robbery, a Class C felony. However, the offense is a Class B felony if it . . . results in bodily injury to any person other than a defendant . . . .

The charging information, as amended, alleged that Perez and Jose, "on or about March 4, 2012, did knowingly take from . . . [Herrera] property, that is: phone and/or check and/or U.S. Currency, by putting [Herrera] in fear or by using or threatening the use of force on [Herrera], which resulted in bodily injury to [Herrera] that is: lacerations and/or cuts and/or pain." Appellant's Appendix at 39. Thus, in order to convict Perez of robbery as a class B felony, the State needed to prove that Perez knowingly took either Herrera's phone, currency, or the check, by putting Herrera in fear or by threatening the use of force and caused bodily injury in the form of lacerations, cuts, or pain.

Perez argues that the State failed to prove that he took Herrera's property. Specifically, Perez argues that the only currency discussed at trial was a one dollar bill, and Herrera testified that, following the incident, the wallet still contained the currency. Perez argues that Herrera was asked if he recovered his cell phone, and he replied "with a vague 'uhh-uh'," and Detective Lemond testified that Herrera "told him the only property taken was the" check. Appellant's Brief at 6. Finally, Perez argues regarding the check that no witnesses testified that they saw a check being removed from Herrera's wallet, that Herrera's explanation that he received a check from Sosa for a remodeling job "does not make sense" because Sosa owned his own construction company and was dying of cancer and had been undergoing chemotherapy, and that even "assuming arguendo that somebody dying of cancer and undergoing chemotherapy wanted to do a remodeling job, they would want it done quickly" and by their own company rather than by somebody

5

working construction as a third job such as Herrera.[4] Id. at 5-6. Perez also argues that Herrera never told Justino about the check, Justino had not seen the check, the State did not produce evidence demonstrating that the check had been canceled by Sosa, and the detective never verified that the check existed.

Here, the evidence most favorable to Perez's conviction reveals that Perez, while accompanied by Jose, broke down Herrera's door and entered the apartment. Jose found Herrera in the bathroom and told Herrera "here you are" and "I told you," which made Herrera feel scared. Transcript at 55-56. Jose struck Herrera with the beer bottle which caused him pain. Jose dragged Herrera by his ponytail into the living room, and in so doing struck Herrera with his hands and feet several times. Jose removed Herrera's cell phone and wallet from his pockets. Perez also kicked Herrera. Herrera testified that, prior to the incident, his wallet contained a check for $1,000 which was missing afterwards. The State presented numerous photographs of Herrera depicting cuts or scrapes on his head, leg, and torso. Perez's argument is merely a request that we reweigh the evidence and reevaluate the credibility of the witnesses, which we cannot do. See Rohr v. State, 866 N.E.2d 242, 248 (Ind. 2007), reh'g denied.

Based upon our review of the record, we conclude that evidence of probative value exists from which the jury could have found Perez guilty beyond a reasonable doubt of robbery as a class B felony. See Davis v. State, 835 N.E.2d 1102, 1111 (Ind. App. Ct. 2005) ("[W]here two people act in concert to commit a crime, each may be charged as a principal in all acts committed by the accomplice in the accomplishment of the crime."),

---

[4] Perez cites to the testimony of Justino that, around the time of the incident, Herrera was working sixty to seventy hours a week at a factory and at Taco Bell.

6

trans. denied; Thompson v. State, 612 N.E.2d 1094, 1098 (Ind. Ct. App. 1993) (noting that "[t]he uncorroborated testimony of even one witness is sufficient to support a conviction" and that "[t]his is true even though the witness in question is the victim"), reh'g denied, trans. denied.

Finally, as noted by the State in its brief, the abstract of judgment indicates that Perez was convicted of criminal confinement as a class B felony rather than as a class D felony. As noted above, the court granted the State's motion to amend the charge of criminal confinement to a class D felony, and the verdict form entered by the jury states that it found Perez guilty of criminal confinement as a class D felony. Accordingly, we remand with instructions that the court issue an amended abstract of judgment as well as enter Perez's conviction for criminal confinement on Count III as a class D felony.

For the foregoing reasons, we affirm Perez's conviction for robbery as a class B felony and remand for the court to issue an amended abstract of judgment correcting a scrivener's error and entering a conviction on Count III as criminal confinement as a class D felony.

Affirmed and remanded.

RILEY, J., and BRADFORD, J., concur.